## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ANGELO HARRIS,**<br><br>**Defendant.** | **Case No. 25-CR-185 (ACR)** |

## GOVERNMENT'S OMNIBUS MOTIONS *IN LIMINE*

The United States, by and through its attorney, the United States Attorney's Office for the District of Columbia, respectfully submits this omnibus pleading that includes motions *in limine* in advance of the trial in this case, currently scheduled for February 17, 2026. In all, the Government requests (1) to exclude the Government's case agent from sequestration, (2) to admit certain business records as authentic, (3) to admit certain Internet searches as intrinsic evidence, or, in the alternative, proper evidence under Federal Rule of Evidence 404(b), and (4) to permit the Government to impeach Defendant with prior convictions should he testify.

The Government offers the authorities and analysis below to promote efficiency and reduce the need to argue objections mid-trial. Although neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence expressly contemplate motions *in limine*, the practice of allowing such motions has developed over time "pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). "Motions *in limine* are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011)). For each motion herein, the Government requests that the Court grant the

requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

## **RELEVANT FACTUAL BACKGROUND**

On April 29, 2025, at approximately 3:26 AM, MPD responded to Mac's Tire Service, which is a commercial automotive garage located at 423 Florida Avenue NE, in reference to an armed robbery. A store employee reported that two armed and unidentified subjects ("Subject 1" and "Subject 2") entered the garage from the Florida Avenue NE entrance and pointed firearms at him. Subject 1 was armed with a black handgun and Subject 2 was armed with what appeared to be a black rifle with a tan magazine. The Subjects demanded that the employee take them to the cash register room. One of the Subjects threatened to shoot the employee if he did not comply, so he did. The Subjects stole approximately $400 to $500 from the cash register and a metal box with unknown contents from one of the cabinets. Afterwards, the Subjects fled the establishment on foot, exiting onto Florida Avenue NE.

MPD obtained surveillance videos from the garage and the surrounding area that showed several important features. First, the surveillance video corroborated the employee's report and showed the two Subjects and their firearms, a screenshot of which is below.



Second, the surveillance video showed a closeup image of at least one of the Subjects.



Third, the surveillance video showed a black Lincoln Navigator SUV, which had silver accents and

a white mark underneath the rear taillight, arriving and circling the block prior to the armed robbery. The vehicle passed the entrance to Mac's, which is depicted by the red "X" in the screenshot below, and eventually parked along the east curb in the 1200 Block of 5th Street NE.



Finally, surveillance video also showed the two Subjects walking from the direction of the parked vehicle before the armed robbery and toward the direction of the parked vehicle after the armed robbery.

Based on this surveillance video, law enforcement pursued additional surveillance video of the surrounding area to discern the flight path of the black Lincoln Navigator after the armed robbery. Through a patchwork of surveillance videos, law enforcement observed that the black Lincoln Navigator had fled eastbound on H Street NE, before continuing to Benning Road NE.  The vehicle then passed into the 4500 Block of Benning Road SE, continuing toward Southern Avenue SE, when it drove near a bus from the Washington Area Metropolitan Transit Authority ("WMATA").  The WMATA bus, which has interior and exterior cameras, captured an image of the black Lincoln Navigator, which is consistent with the surveillance video from the area surrounding the armed robbery.  It showed that the black Lincoln Navigator appeared to have a broken right rear taillight covered with red tape, as shown below.



Based on license plate reader ("LPR") records, law enforcement learned the license plate of the black Lincoln Navigator. The vehicle in the images associated with the LPR records was also consistent with the vehicle in the WMATA bus video. Below is a comparison.





LPR records also showed that the vehicle frequently parked near 50th Street NE and Fitch Place NE, which is in the vicinity of the Providence Place Apartments located at 599 50th Street NE, which will be discussed in more detail below.

Through the course of this investigation, law enforcement learned that the registered owner of the black Lincoln Navigator has a relative whose physical description is consistent with one of the Subjects from the armed robbery. That relative, Defendant Angelo Harris, has a face tattoo that is also consistent with the Subject's face tattoo, as shown below.



Law enforcement also learned that Defendant was on probation in Maryland at the time of the instant offense.  Around the time of the instant offense, Defendant had requested to transfer his probation from Maryland to DC in order to live with his fiancée at 599 50th Street NE.  Based on subsequent physical surveillance, law enforcement observed the black Lincoln Navigator in the vicinity of 599 50th Street NE.

On May 13, 2025, members of the Capital Area Regional Fugitive Task Force ("CARFTF") and the U.S. Marshal's Service ("USMS") responded to 599 50th Street NE to execute an arrest warrant for Rashad Ervin, who essentially is Defendant's stepson.  Ervin had a pending arrest warrant in an unrelated criminal matter originating from DC Superior Court.[1]  Once CARFTF and USMS arrived, they placed Ervin under arrest and secured the residence by detaining every individual therein.

Law enforcement then simultaneously executed two search warrants at the residence of 599 50th Street NE.  First, they executed a search warrant relating to Ervin's unrelated criminal matter, as

---

[1] Upon Ervin's arrest, he was charged with several armed robberies in DC Superior Court Case No. 2025 CF3 005430.  He was ultimately indicted with various charges relating to seven armed robberies or attempted robberies in that case.

reflected in DC Superior Court Search Warrant 2025 CSWSLD 002067. Second, they executed a search warrant relating to the investigation into the instant matter, as reflected in District Court Search Warrant 25-SW-132, which was under seal at the time. Law enforcement also placed a tracker on the black Lincoln Navigator, as reflected in District Court Search Warrant 25-TW-8, which was also under seal at the time. When Defendant and his fiancée asked about the purpose of the search, law enforcement explained that they had a search warrant relating to Ervin's criminal matter; they did not mention the other search warrant for the investigation into the instant matter.

During the execution of the search warrant, law enforcement obtained several pieces of relevant evidence, including clothing. For example, law enforcement seized an all-black Nike zip-up hoodie with a small Nike swoosh on the left chest because it was consistent with the one worn by one of the Subjects in the armed robbery at Mac's. As the law enforcement member began to lift it up, Defendant uttered (without being asked), "That's mine." As the member photographed it and began to place it into an evidence bag, Defendant uttered, "That's my jacket. Why y'all taking that? What does that have to do with anything?" Additionally, a law enforcement member also found a black over-the-head facemask. As the member was photographing and handling the mask, Defendant uttered, "That's my mask. I need that for work." No member had asked Defendant any questions to prompt these responses. Below is a comparison of the Subject's clothing as seen in the surveillance video of the instant offense, followed by the clothing seized from the residence.

  






A short time later, two law enforcement members were discussing one of the seized items: a Kia key fob. One of the members asked the fiancée if she owned a Kia vehicle. The fiancée responded that she did not have a car, but that her mother had a Kia vehicle and that her mother often gives her the extra key fob. A law enforcement member then asked, "Does someone drive a Lincoln?" Defendant responded, "I drive a Navigator. It's outside." Defendant then indicated that his keys were "over there" around the kitchen area.

Thereafter, the Government obtained a search warrant for cell site data associated with Defendant's phone number, as reflected in 25-SC-837. That data showed that on April 29, 2025, between 3:03 AM and 3:17 AM (*i.e.*, immediately before the instant armed robbery), the device associated with the Subject Phone Number was in the vicinity of Mac's.



Additionally, the data showed that the device's travel after the instant armed robbery was consistent with the travel of the black Lincoln Navigator's flight after the instant armed robbery.

Law enforcement further strengthened the salience of this cell site data in reviewing the data from May 8, 2025. On that date, law enforcement had been conducting physical surveillance of the black Lincoln Naviagator at the BP gas station located at 5207 Nannie Helen Burroughs Avenue NE. Law enforcement observed Defendant exiting the black Lincoln Naviagor. And cell site location data associated with Harris' phone number revealed that the device was in the vicinity of the BP gas station on that date and around that time.



On May 30, 2025, the U.S. District Court for the District of Columbia approved a criminal complaint with an arrest warrant charging Defendant with one count of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a).  The complaint, investigation, and search warrants therefrom were all under seal.

On June 10, 2025, Defendant was arrested at 599 50th Street NE (*i.e.*, the same residence in which the two search warrants had been executed on May 13, 2025).  After the arrest, law enforcement also executed a search warrant on the residence, as reflected in 25-SW-157, during which they seized a Motorola cellphone.  Law enforcement obtained an additional search warrant for the Motorola cellphone, as reflected in 25-SW-175.  The data from the Motorola cellphone revealed, among other things, that it utilized the Subject Phone Number and belonged to Defendant.  The data also showed Internet searches for various handguns for sale during the week before the instant armed robbery; additionally, the data showed Internet searches related to crime statistics and robberies in northeast D.C.

In particular, as detailed below, the cellphone data showed several Internet searches on April 22, 2025, relating to the purchase of firearms:

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/guns-under-500/handguns-under-300/c/cat140824?srsltid=AfmBOorVG Nz9KZu-LQTkXn_tksQ12LKoww_5nG9izLsYRY3Ft6VA2naV |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:29:45.934 AM |
| Title | Handguns Under $500 \| Guns Under $500 \| Sportsman's Warehouse |
| Visit Count | 7 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2102) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170661 |

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/search/?text=.45 |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:27:27.175 AM |
| Title | Search .45 \| Sportsman's Warehouse |
| Visit Count | 2 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2103) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170666 |

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/search/?text=.40+under+500 |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:27:06.069 AM |
| Title | Search .40 under 500 \| Sportsman's Warehouse |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2104) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170670 |

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/guns-under-500/handguns-under-300/c/cat140824?sort=sale-desc&q= %3Arelevance |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:27:42.165 AM |
| Title | Handguns Under $500 \| Guns Under $500 \| Sportsman's Warehouse |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2105) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170674 |

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/shooting-gear-gun-supplies/handguns/taurus-tx22-22-long-rifle-4 6in-anodized-black-pistol-221-rounds/p/1883976 |

| | |
|---|---|
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:28:40.532 AM |
| Title | Taurus TX22 22 Long Rifle 4.6in Anodized Black Pistol - 22+1 Rounds \| Sportsman's Warehouse |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2106) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170680 |

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/shooting-gear-gun-supplies/handguns/ruger-sr22-22-long-rifle-35in-black-pistol-101-rounds/p/1291028 |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:29:25.242 AM |
| Title | Ruger SR22 22 Long Rifle 3.5in Black Pistol - 10+1 Rounds \| Sportsman's Warehouse |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2107) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170685 |

| | |
|---|---|
| Tags | Evidence |
| URL | https://www.sportsmans.com/shooting-gear-gun-supplies/handguns/eaa-girsan-mc28sa-9mm-luger-425in-black-pistol-171-rounds/p/1570997 |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:30:24.068 AM |
| Title | EAA Girsan MC28SA 9mm Luger 4.25in Black Pistol - 17+1 Rounds \| Sportsman's Warehouse |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2109) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170694 |

| | |
|---|---|
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:21:49.511 AM |
| Title | guns for sale under $500 - Google Search |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2101) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170699 |

| | |
|---|---|
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/22/2025 2:33:32.818 AM |
| Title | Ruger 22 Charger Takedown 22 Long Rifle 10in Black Modern Sporting Pistol - 15+1 Rounds \| Sportsman's Warehouse |
| Visit Count | 1 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2111) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 170707 |

Then, several hours after the robbery on April 29, 2025, the cellphone data showed several Internet or Google searches relating to robberies in northeast D.C., crime statistics, and Fox News reports, as illustrated below:

| | |
|---|---|
| URL | https://www.fox5dc.com/tag/us/dc/northeast?page=3 |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/29/2025 4:56:03.443 PM |
| Title | Northeast \| FOX 5 DC |
| Visit Count | 2 |
| Typed Count | 0 |
| Source | • EXTRACTION_FFS.zip\Dump\data\data\com.android.chrome\app_chrome\Default\History |
| Location | • Table: urls(id: 2522) |
| Evidence number | • EXTRACTION_FFS.zip |
| Recovery method | • Parsing |
| Item ID | 173422 |

| | |
|---|---|
| URL | https://www.google.com/search?q=dc+robberies+in+northeast+dc&oq=Dc+robberies+in+North+&gs_lcrp=EgZjaHJvbWUqBwgCECEYoAEyBggAEEUYOTIHCAEQIRigATIHCAIQIRigATIHCAMQIRigATIHCAQQIRig AUQIRirAjIHCAYQIRirAjIHCAcQIRiPAtIBCDI5MjFqMGo0qAIOsAIB8QVEyDLARzwrzA&client=ms-android-mo torola-rvo3&sourceid=chrome-mobile&ie=UTF-8 |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/29/2025 4:55:49.001 PM |
| Title | dc robberies in northeast dc - Google Search |
| Visit Count | 3 |

| | |
|---|---|
| URL | https://crimecards.dc.gov/ |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/29/2025 4:55:29.179 PM |

| | |
|---|---|
| URL | https://mpdc.dc.gov/dailycrime |
| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | 4/29/2025 4:55:41.652 PM |
| Title | District Crime Data at a Glance \| mpdc |
| Visit Count | 1 |

On July 1, 2025, the Grand Jury returned an indictment, charging Defendant with one count of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a).

On December 9, 2025, the Grand Jury returned a superseding indictment, charging Defendant with four counts: (1) Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); (2) Using, Carrying, and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); (3) Assault with a Dangerous Weapon (Firearm or Imitation Thereof), in violation of 22 D.C. Code § 402; and (4) Possession of a Firearm During a Crime of Violence (Firearm or Imitation Thereof), in violation of 22 D.C. Code § 4504(b).  Trial is currently scheduled for February 17, 2026.

## LEGAL ARGUMENT

### I.    Motion *in Limine* to Exclude from Sequestration

The Government moves the Court to instruct the witnesses for both prosecution and defense to comply with Rule 615 of the Federal Rules of Evidence. The Government further requests that FBI Special Agent John Joyce be allowed to sit at counsel's table as the designated case agent. *See United States v. Drummond*, 69 F. App'x 580, 581-82 (3d Cir. 2003) (finding that a case agent for the government ordinarily cannot be sequestered pursuant to Rule 615); *see also United States v. Smith*, 108 F.4th 872, 881 (D.C. Cir. 2024) (noting that a government case agent fits squarely within the text of Rule 615(b)).

### II.    Motion *in Limine* to Offer Various Records into Evidence Pursuant to Rule 902(11) and 902(13)

Through this motion *in limine*, the United States gives notice of its intention to introduce certain video evidence pursuant to FRE 902(11) and 902(13), which states as follows:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> **(11) Certified Domestic Records of a Regularly Conducted Activity**. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written

notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

**(13) Certified Records Generated by an Electronic Process or System.** A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

Specifically, the Government intends on offering the following items into evidence pursuant to the above-mentioned rule:

- Video footage from WMATA Bus #3257 on 4/29/2025

- Video footage from Two Rivers Public Charter School at 1227 4th Street NE on 04/29/2025

- Video footage from the Consolidated Cab Association at 3399 Benning Road NE on 04/29/2025

- Video footage from Mac's Tire Service at 423 Florida Avenue NE on 04/29/2025

- Video footage from Family Food Market at 4700 Marlboro Pike on 04/29/2025

- One license-plate reader image from Flock at Alabama Avenue and Ainger Place SE on 05/01/2025

- Call-detail, cell site location, data session, timing advance, and subscriber records from T-Mobile in regard to phone number ending in -3710

- Call-detail and subscriber records from T-Mobile in regard to phone number ending in -9742

- Call-detail and subscriber records from AT&T in regard to phone number ending in -0355

- Case file and case note records from Maryland Department of Public Safety and Correctional Services in regard to supervisee Angelo Harris

The Government has disclosed to the defense all these records with an accompanying certificate of authenticity from the custodians of these respective records. These certificates state, specifically under the penalties of perjury and Rules 902(11) and (13), that such records were made at or near the time of the occurrence, were kept in the ordinary course of regularly conducted business activity,

were made as a regular practice in the business, were generated by their electronic process or system that produces an accurate result, and were copied/provided in a manner to ensure that they are true duplicates of the original records. The certificates also state that the processes or systems from which the records were produced were functioning properly and normally.

Here, as all records have been authenticated with a certificate that is signed by the respective records custodian, they are presumptively admissible. *See United States v. Edwards*, 2012 U.S. Dist. LEXIS 163044, *7 (D.D.C. Nov. 15, 2012) (overruling defendant's objection and noting that "this is not a close case" because "[a]t least five separate Circuits have held that certifications used pursuant to Federal Rule of Evidence 902(11) to authenticate business records are not testimonial and can be used to lay a foundation for the admissibility of business records"); *Klayman v. Jud. Watch, Inc.*, 299 F. Supp. 3d 141, 144 (D.D.C. 2018) ("The threshold for proof of authenticity is low."); *see also United States v. Adefehinti*, 510 F.3d 319, 328 (D.C. Cir. 2007) (finding no error in admitting various loan documents under Rule 902(11) because they were accompanied by certificates of authenticity from records custodians); *Wood v. Billings*, No. 13-CV-281, 2014 WL 4410676, at *4 (E.D. Wisc. Sept. 8, 2014) ("The records custodian who produced the records verified that the records are true and correct copies of the chart. []As such, the chart is presumed reliable and is admissible per Fed. R. Evid. 902(11)."). Accordingly, the Court should permit the Government to admit such records as self-authenticating, without live testimony from a records custodian, under Rule 902(11) and (13).

### III.    Motion *in Limine* to Admit Defendant's Internet Searches as Intrinsic Evidence or, in the Alternative, Pursuant to Rule 404(b)

Defendant's Internet search history is powerful, direct evidence of his planning, execution, and immediate post-offense conduct surrounding the charged armed robbery on April 29, 2025. These searches are not collateral, or speculative; they are temporally and logically intertwined with the offense and complete the story of the crime he committed. As such, they are admissible as intrinsic

evidence.

In the week leading up to the armed robbery, Defendant conducted multiple internet searches concerning the purchase of a handgun, including searches related to the purchase of a handgun from Sportsman's Warehouse and a Google search for "guns for sale under $500." These searches are compelling evidence of Defendant's preparation for committing an armed robbery. They demonstrate advance planning, deliberation, and a calculated effort to acquire a firearm in close temporal proximity to the offense. The searches are not innocuous nor are they a coincidence; they directly correspond to the means by which this armed robbery was carried out..

Defendant's Internet activity did not end with the commission of the crime. Within hours after the armed robbery, Defendant searched for "robberies in northeast dc," crime data in Washington, DC and news coverage of crimes in Northeast DC, from DC's local news outlet "FOX 5 DC." These post-offense searches reflect Defendant's immediate concern about law-enforcement response and media coverage of the robbery he had just committed. Such conduct is classic evidence of consciousness of guilt and an effort to assess whether his crime had been detected or reported.

Taken together, Defendant's internet searches establish a clear narrative of preparation before the robbery and consciousness of guilt afterward. The searches are part and parcel of the charged offense, illuminate Defendant's state of mind, and provide necessary context for the jury to understand how the crime was planned and how Defendant reacted once it was completed.

Accordingly, the Government moves in limine for a ruling admitting the Defendant's internet searches as intrinsic evidence. In the alternative, should the Court conclude that the searches are not intrinsic, the Government hereby provides notice of its intent to introduce evidence of Defendant's Internet searches pursuant to Rule 404(b) of the Federal Rules of to prove Defendant's intent, identity and consciousness of guilt, preparation, absence of mistake, and lack of accident with respect to the charged offenses. *See* Fed. R. Evid. 404(b)(2).

A.    **Defendant's Internet Searches Are Admissible as Intrinsic Evidence, Obviating the Need for any Analysis under Rule 404(b)**

As the D.C. Circuit has explained, "[g]enerally intrinsic evidence includes 'act[s] that [are] part of the charged offense' or 'some uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'" *United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)); *see also United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (approvingly quoting *Bowie*, 232 F.3d at 929); *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (approvingly quoting *Bowie*, 232 F.3d at 929); *United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) ("[I]f evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, it is properly considered intrinsic.") (internal quotations omitted); *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) ("[A]cts are intrinsic when they are inextricably intertwined or [the] acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.") (internal quotations omitted).  Intrinsic evidence is part of the chain of events completing the story of the crime, *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992), evidence that is "linked together in time and circumstances" with the crime charged, *United States v. Beechum*, 582 F.2d 898, 912 (5th Cir. 1976), and evidence that is part of a "continuing pattern of criminal activity," *United States v. Toney*, 161 F.3d 404, 413 (6th Cir. 1998).[2]

Here, Defendant's various Internet searches for "handguns for sale" one week before he actually used a handgun in the instant armed robbery and Internet searches for "robberies in northeast dc" in the hours after the instant armed robbery are inextricably intertwined with—and thus intrinsic

---

[2]  Should the Court deem Defendant's Internet searches admissible as *intrinsic* evidence, it need not need determine whether Defendant's Internet searches are admissible as *extrinsic* evidence under Rule 404(b).  Evidence of "other crimes" or "uncharged conduct is not considered other crimes" for Rule 404(b) purposes "if it arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime [on] trial." *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) (internal quotation marks omitted).

to—the charged offenses. These two sets of Internet searches serve as bookends to "complete the story" of the instant armed robbery—both before and after the charged offenses. First, the Internet searches are "part of the charged offense" and "facilitate the commission of the charged crime" because they show Defendant's research about firearms and preparations to arm himself close in time to—specifically, one week before—the charged offenses. *See Bowie*, 232 F.3d at 927 ("Evidence that constitutes the very crime being prosecuted is not of that sort [under Rule 404(b)]."). The Internet searches are "offered as direct evidence of a fact in issue"—namely, that Defendant armed himself with a firearm to commit the instant robbery on April 29, 2025. *See, e.g.*, *United States v. Killian*, 230 F. App'x 347, 348 (4th Cir. 2007) (affirming conviction and holding that "[defendant]'s actions in preparation to steal tires was intrinsic to the crime of possession of a firearm" because he "retrieved the firearm for the purpose of facilitating his plan to steal tires"); *United States v. Okafor*, 2024 U.S. Dist. LEXIS 170895, at *19 (D.D.C. Sept. 23, 2024) (holding that "because the conversations solicited the controlled substances [defendant] is charged with distributing, they were 'performed contemporaneously with' and 'facilitated' the charged crimes and are therefore intrinsic"); *United States v. Lorenzana-Cordon*, 2017 U.S. Dist. LEXIS 233138, at *34 (D.D.C. June 2, 2017) (reiterating that "[d]efendants' alleged possession and use of weapons, as well as their reliance on heavily-armed security, are [intrinsic because they are ] part and parcel to the alleged drug trafficking operation and constitute contemporaneous conduct designed to facilitate and advance the goals of the charged conspiracy").

What is critical is that the Internet searches complete the story of the charged offenses. *United States v. Grunwaldt*, No. 23-4257, 2025 WL 1577561, at *4 (4th Cir. June 4, 2025), *cert. denied*, 146 S. Ct. 340 (2025) ("Importantly, this Court very recently held that nearly identical evidence of 'web searches' from the same time as the charged child pornography offense, located on the same device that the defendant used to 'discover, view, create, and store' child pornography, was intrinsic evidence

that completed the story of the crime. "); *United States v. Nordwall*, 998 F.3d 344, 347 (8th Cir. 2021) (Internet searches relevant to Defendant's intent when he traveled across state lines to commit a crime).    Courts have held that nearly identical evidence—web searches conducted contemporaneously with the charged offense—constituted intrinsic evidence because it completed the story of the crime. Defendant's Internet searches are not offered to explain his general access to firearms on some other, unrelated date; instead, the Internet searches are "linked together in time and circumstances" with the charged offenses—only one week before—and explain how he carried out the charged offenses. *See United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998) (holding that defendant's "billing practices was intrinsic to the mail-fraud offenses alleged in the indictment and therefore did not constitute 404(b) materials" and explaining that "the jury is entitled to know the 'setting' of a case" because "[i]t cannot be expected to make its decision in a void-without knowledge of the time, place and circumstances of the acts which form the basis of the charge").    Courts have consistently held that internet searches are intrinsic where they are relevant to a defendant's intent and closely connected in time and circumstances to the charged conduct. Here, this evidence goes squarely to the Government's burden to prove that Defendant was armed at the time he robbed Mac's Tire Service on April 29, 2025.

Second, Defendant's Internet searches provide evidence of consciousness of guilt.    These searches demonstrate not only that Defendant was aware that a robbery had occurred in Northeast DC, but also that he was sufficiently interested in—or concerned about—the incident to seek out information about it.    Courts have routinely treated post-offense statements and conduct reflecting concern about charged conduct as intrinsic evidence of guilt. *Cf. United States v. Vaca*, 38 F.4th 718, 722 (8th Cir. 2022) (collecting cases and explaining that "we have treated 'threats against witnesses' [and] jailhouse 'statements express[ing] concern' about the charges as intrinsic" because "it directly relates to the charges that the defendant is facing"); *United States v. Bradley*, 924 F.3d 476, 483 (8th

Cir. 2019) ("[Defendant]'s post-arrest statements express concern about the charges against him, which is direct evidence of consciousness of guilt. The evidence is thus intrinsic to his charged crimes, so Rule 404(b) does not apply."). Accordingly, these searches are admissible as intrinsic evidence of Defendant's guilt.

### B.    Alternatively, Defendant's Internet Searches Are Admissible under Rule 404(b)

Alternatively, if this Court were to deem Defendant's Internet searches as extrinsic as opposed to intrinsic evidence, this evidence should be admitted under Rule 404(b)t. Under Rule 404(b), "other acts" evidence is admissible if it is offered for a permissible purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See United States v. Pindell*, 336 F.3d 1049, 1056 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1200 (2004); *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 825 (1990).

In determining whether "other acts" evidence is admissible, the Court applies a two-part analysis. First, the Court examines whether the evidence is "probative of some material issue other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994); *see also United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity [to commit crime]? If yes, the evidence is admissible unless excluded under other rules of evidence such as Rule 403."). The rule is one of inclusion, not exclusion, and evidence can properly be offered for any purpose other than solely to prove character. *See Douglas*, 482 F.3d at 596; *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005); *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003); *Bowie*, 232 F.3d at 929-30; *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc); *Miller*, 895 F.2d at 1436. Second, if the Court deems evidence to have met the first part of this analysis, the Court should include it unless its probative value is "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403;

*United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978); *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see also United States v. Johnson*, 802 F.2d 1459, 1463-64 (D.C. Cir. 1986) (explaining that "the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged") (quoting *Day*, 591 F.2d at 878).  The D.C. Circuit has emphasized that exclusion of otherwise relevant evidence is not appropriate if the evidence is merely prejudicial; the prejudice must be "unfair."  *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material.  The prejudice must be unfair.") (internal quotation marks omitted).

Furthermore, a party is entitled to introduce evidence pursuant to Rule 404(b) in its case-in-chief to anticipate the other party's likely defense.  *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."); *United States v. Harrod*, 856 F.2d 996, 1000 (7th Cir. 1988) ("[T]he Government may introduce evidence of other acts to establish intent in its case-in-chief."); *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985) ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may take the defendant at his word and introduce the evidence in its case-in-chief"); *United States v. Lewis*, 759 F.2d 1316, 1349 n. 14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief"); *United States v. Hooton*, 662 F.2d 628, 635 (9th Cir. 1981) (citation omitted) ("[E]ven in general intent crimes, the government can offer evidence of other acts as part of its case-in-chief when

it is obvious that the defense will raise lack of intent as a defense.").

Here, Defendant's various Internet searches for "handguns for sale" one week before the charged offenses and searches for "robberies in northeast dc" after the charged offenses are admissible under Rule 404(b). Under the first part of the analysis—whether the proposed evidence is probative of a material issue other than character—these Internet searches are probative of Defendant's intent to possess (and ultimately carry and brandish) a firearm, identity to show that Defendant was the suspect with the handgun on surveillance video at Mac's Tire Service and was concerned about his involvement such that he was searching for information afterwards, preparation to commit the charged offenses by researching and arming himself, and absence of mistake or accident. The searches demonstrate that Defendant researched and armed himself before the robbery, and that afterward he sought information reflecting concern about his involvement in the charged conduct. *See Crowder*, 141 F.3d at 1208 (explaining that Rule 404(b) evidence "will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation and the like").

First, Defendant's Internet searches are admissible to show his intent to carry and brandish an actual firearm in furtherance of the robbery. Because Defendant is charged with Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c) in Count 2 of the Indictment, whether Defendant intentionally armed himself with a firearm is a central issue in dispute. Defendant's pre-offense searches for firearms directly support the inference that he intentionally obtained and carried a real handgun during the robbery at Mac's Tire Service, rather than acting accidentally or without advance preparation. "The D.C. Circuit has consistently allowed the admission of other crimes evidence relating to possession of . . . firearms under Rule 404(b) to demonstrate knowing possession and absence of mistake." *United States v. Williams*, 507 F. Supp. 3d 181, 191 (collecting cases).

Second, Defendant's Internet searches are admissible to show identity, another permissible

purpose under Rule 404(b).  Evidence that Defendant searched for the purchase of a firearm—and specifically, a handgun, with which he is ultimately seen on surveillance video during the charged robbery—in the one week leading up to the charged robbery and then searched for news coverage of the charged robbery in the hours following its commission is weighty evidence that he was the suspect with the handgun robbing Mac's Tire Service on surveillance video.  These searches closely track the charged conduct in both timing and subject matter and thus constitute powerful circumstantial evidence of identity.

Courts have repeatedly recognized that other-acts evidence may be critical to establishing identity and state of mind, particularly where those elements are contested and must be proven through inferences drawn from conduct. *Cf. Huddleston*, 485 U.S. at 685 ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."); *United States v. Norweathers*, 895 F.3d 485, 489 (7th Cir. 2018) (where identity and intent were to be contested at trial admission of defendant's uncharged emails was appropriate); *United States v. Tice*, 133 F.3d 908 (2d Cir. 1998) (where defense in drug manufacturing case was the identity of the person growing the marijuana, evidence of prior the defendant's manufacturing conviction was admissible under Rule 404(b)); *United States v. Golubski*, No. 22-CR-40055-TC-1, 2024 WL 1199256, at *8 (D. Kan. Mar. 20, 2024) (admitting Rule 404(b) evidence where defendant "says he did not commit the crime(s), for one reason or another, making the identity of the perpetrator the fundamental question"); *United States v. Browne*, 602 F. Supp. 3d 687, 692 (D.N.J. 2022) (allowing internet search history as 404(b) evidence in child pornography case for identity).  The fact that Defendant's Internet searches were conducted in such close temporal proximity—one week before—to the charged offenses strengthens the inference of identity.  Accordingly, Defendant's internet searches are properly admissible under Rule 404(b) as probative

evidence of identity.

Third, Defendant's Internet searches for "robberies in northeast dc" in the few hours after the charged robbery constitutes evidence of consciousness of guilt, which furtherf supports "identity".[3] "Consciousness of guilt is a recognized permissible use for evidence under Rule 404(b)." *United States v. Martin*, 2025 U.S. Dist. LEXIS 131290, at *20-21 (collecting cases, holding that "flight [from law enforcement] evidence may be properly offered 'to prove identity,'" and explaining that it "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such"); *see also United States v. Pindell*, 336 F.3d 1049, 1057, (D.C. Cir. 2003) (affirming conviction and holding that district court properly admitted defendant's statement "that he had been robbing prostitutes' customers, and that he would hurt her if she told anyone . . . . for the purpose of proving [defendant]'s intent to rob the prostitutes' customers and to rebut the suggestion that he was present at the scene of the robberies by mistake or accident"); *United States v. Johnson*, 46 F.3d 1166, 1171 (D.C. Cir. 1995) (finding no error in admitting defendant's false statement about his employment because it "suggested that he was concealing the actual source of his income, drug dealing," and therefore "was probative of consciousness of guilt" under Rule 404(b)); *United States v. Khatallah*, 2017 U.S. Dist. LEXIS 227265, at *5 (D.D.C. Sep. 7, 2017) (allowing evidence that "the defendant increased his personal security and sought to hide out" because it "shows a consciousness of guilt" under Rule 404(b) and explaining "[t]hat there may be innocent explanations as well does not negate the permissible use for this information, and the defense is free to elicit evidence of such an explanation for the defendant's

---

[3] Here, Defendant's decision to search for news about "robberies in northeast dc" within hours of the charged robbery supports the inference that he was concerned about his involvement in the offense and whether it had attracted law-enforcement attention. That inference, in turn, reinforces the conclusion that Defendant was the individual who committed the charged robbery. Defendant's post offense internet searches are therefore admissible under Rule 404(b) as probative evidence of consciousness of guilt and identity. *Crowder*, 141 F.3d at 1208 (explaining that Rule 404(b) evidence "will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation and the like").

actions").  In short, the searches show that Defendant knew the gravity of what he did.

Fourth, Defendant's various Internet numerous searches of "handguns for sale" are probative of Defendant's preparation to commit the charged robbery, which involved a handgun.  Courts routinely hold that preparatory conduct is admissible under Rule 404(b). *See United States v. Garner*, 396 F.3d 438, 441 (D.C. Cir. 2005) (acknowledging that preparation is a proper basis to seek admission of 404(b) evidence); *United States v. Reed*, 459 F. App'x 644, 646 (9th Cir. 2011) (affirming conviction and holding that evidence of burglary where defendant stole firearm used in the charged robbery was admissible to show preparation for that robbery); *Khatallah*, 2017 U.S. Dist. LEXIS 227265, at *4-5 ("The evidence of the other acts the Government seeks to introduce speaks to the steps the defendant took to prepare for the attack and the charged conduct associated with it, and thus is relevant to prove preparation, a permissible purpose under Rule 404(b)."); *United States v. Moore*, 75 F. Supp. 3d 444, 451 (D.D.C. 2014) (holding that prior arrests "involving similar drugs to the present case, similar storage methods, and the like, have significant probative value regarding [defendant]'s 'intent, preparation, plan, knowledge, . . . absence of mistake, [and] lack of accident'" under Rule 404(b).  Put simply, Defendant's Internet research during the one week leading up to the charged robbery shows how Defendant got ready to rob Mac's with a handgun.  That evidence goes directly to preparation, intent and plan- not character- and is therefore highly probative and properly admissible under Rurle 404(b).  *United States v. Loza*, 764 F. Supp. 2d 55, 57 (D.D.C. 2011) ("[A]ny purpose for which evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character or criminal propensity.").

The remaining question is whether Defendant's various Internet searches should nevertheless be excluded under Rule 403.  Theyshould not.  The probative value of Defendant's repeated Internet searches for handguns—and his post offense searches for news coverage of the robbery—is not substantiallyoutweighed any conceivable risk of unfair prejudice.

This evidence is not inflammatory, speculative, or cumulative. It is straightforward proof of Defendant's conduct before and after the charged robbery. In the week leading up to the offense, Defendant repeatedly searched for "handguns for sale," directly corroborating the Government's theory that he prepared to commit an armed robbery. In the hours immediately after the robbery, Defendant searched to see whether the crime had made the news, conduct that reflects consciousness of guilt. Jurors are entitled to consider such evidence, and there is nothing unfairly prejdiciial about allowing them to do so. Indeed, courts in this jurisdiction have routinely admitted such evidence as more probative then prejudicial.

Nor can the defendant plausibly claim that this evidence invites an improper propensity inference. The searches are tightly tethered to the charged offense in both time and substance. They explain how Defendant armed himself and how he reacted once crime was complete. That is probative narrative evidence, not character evidence, and Rule 403 does not require the exclusion of damaging evidence simply because it is powerful.

Any residual concern is further minimized by the manner in which evidence will be presented. The evidence will be presented in limited form through the testimony of the previously noticed digital forensics examiner and the limited number of selected searches; this evidence will not prolong the presentation of evidence. The evidence will be concise and focused. To the extent any risk remains, a limiting instruction to consider the evidence only for its intended, proper purposes under Rule 404(b) will fully mitigate it. *See U.S. v. Brown*, 597 F.3d 399, 400 (D.C. Cir. 2010) ("The district court's limiting instructions guarded against the jury's reliance on impermissible inferences that might have been drawn from the Rule 404(b) evidence.").

In short, exclusion under Rule 403 would be unwarranted. Defendant's Internet searches are highly probative of preparation, intent, and consciousness of guilt, and any potential prejudice is neither unfair nor substantial. The evidence should be admitted.

## IV.    Motion *in Limine* to Impeach Defendant with Proof of His Prior Convictions

Rule 609 of the Federal Rules of Evidence allows "for the admission of a defendant's prior convictions for purposes of impeachment, so long as the 'crime . . . was punishable by death or by imprisonment for more than one year' (that is, it was a felony), and 'the probative value of the evidence outweighs its prejudicial effect.'" *United States v. Ford*, 15-cr-25, 2016 WL 259640, at *7 (D.D.C. Jan. 21, 2016) (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 453 (D.D.C. 2014); Fed. R. Evid. 609(a)(1)). In addition, the Rule requires the admission of convictions, even for crimes where the punishment is less than one year if the conviction for the crime required proof of "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). The Rule also sets a higher bar for felonies where "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). In those instances, admission is still appropriate if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). As this Circuit has observed, Rule 609 "stresses admissibility." *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980). "Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary." *Id.*

Here, if Defendant were to testify, the United States should be permitted to impeach him with the following convictions under Rule 609(a)(1)(B):

- Armed Carjacking, Attempt First Degree Murder, Firearm Use/Fel-Viol Crime: Disposition: September 17, 2012 (Baltimore City County, MD in Case No. 111354063).  According to records from the State of Maryland, Defendant was released from custody on/about November 20, 2024.

- o With respect to the Armed Carjacking conviction, Defendant was sentenced to 30 years of confinement with 12 years suspended.

- o With respect to the Attempt First Degree Murder conviction, Defendant was sentenced to 50 years of confinement with 32 years suspended.

- o With respect to the Firearm Use/Fel-Viol Crime conviction, Harris was sentenced to 5 years of confinement.

In *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (*en banc*), the D.C. Circuit conducted an exhaustive review of the legislative history of Rule 609 and noted that "Congress believed that all felonies have some probative value on the issue of credibility." As a result, the D.C. Circuit concluded that that "all felony convictions are probative of credibility to some degree." *Id.* at 1062 (emphasis omitted). Courts in this Circuit consider multiple, non-exhaustive factors in determining whether to admit prior convictions for impeachment, including: (1) the nature of the crime, (2) the time of the conviction, (3) the similarity of the past crime to the charged crime, (4) the importance of the defendant's testimony, and (5) the degree to which the defendant's credibility is central to the case. *United States v. Jackson*, 627 F.2d 1198, 1210 (D.C. Cir. 1980). All or most of these factors weigh in favor of permitting the requested impeachment for each of Defendant's convictions.

**Factor 1: the Nature of the Crimes**: Defendant's prior convictions are of the nature that "say[s] something about [the defendant's] ability to be truthful while under oath." *Moore*, 75 F. Supp. 3d at 455 (admitting unlawful possession of a firearm conviction); *United States v. Jefferson*, 2021 WL 6196988, at *5 (D.D.C. Dec. 30, 2021) (same). Similarly, his prior convictions for Armed Carjacking and Attempt First Degree Murder are indisputably relevant to his credibility because each offense involves the conscious disregard for the rights of others. *See Lipscomb*, 702 F.2d 1049, 1072 (explaining that a "robbery conviction, involves theft and indicates a conscious disregard for the rights

of others"); *United States v. Young-Bey*, No. 21-cr-661, 2024 WL 249181, at *2 (D.D.C. Jan. 23, 2024) (noting, with respect to the prong on probative value, that "[a]lthough murder is not a crime directly involving dishonesty, it is still a serious crime that shows conscious disregard for the rights of others") (internal quotation marks omitted).

**Factor 2: the Time of the Conviction**: Defendant's prior convictions for Armed Carjacking, Attempt First Degree Murder, and Firearm Use are well within the ten-year window that begins on Defendant's release date. Therefore, the "more stringent limitations" that "govern the use of prior convictions that are more than ten years old" and require a finding that the probative value *substantially* outweighs its prejudicial effect under Rule 609(b) are inapplicable to those convictions. *See Moore*, 75 F. Supp. 3d at 453. According to records held by the State of Maryland, Defendant was released from custody on or about November 20, 2024, which was only about five months before the instant offense and a little over a year before the scheduled trial date. Given that Defendant's release from confinement for the above-listed convictions occurred well within the last ten years, this factor weighs in favor of the United States being permitted to impeach Defendant with his convictions.

**Factor 3: Similarity of the Past Crime to the Charged Crime**: Defendant's prior convictions are sufficiently distinct from the charges in the instant matter such that this factor also weights in favor of the Government. As noted by the D.C. Circuit, where there is no similarity between the past crime and the charged crime, "there would be no danger that the jury would have perceived a pattern in [the defendant's] past activities and found him guilty [of the charged crime] because of his prior conviction." *Jackson*, 627 F.2d at 1210. Here, arguably the most similar conviction is Defendant's "Firearm Use" conviction. That similarity, however, is not dispositive. Where a defendant's credibility is likely of "central importance at trial" if he were to testify, such as it is in this case, admission is appropriate, despite any similarity. *See United States v. Jefferson*, 20-

cr-185, 2021 WL 6196988, at *5 (D.D.C. Dec. 30, 2021) (permitting impeachment of conviction for unlawful possession of a firearm in case charging unlawful possession of a firearm). To the extent that the Court has any concern, such a concern could be readily eliminated with a limiting instruction. *Id.* (noting that "the Court will issue a limiting instruction to forestall any impermissible propensity inferences from the evidence of [defendant]'s prior convictions").

**Factors 4 and 5: Importance of the Defendant's Testimony and Degree to Which Defendant's Credibility is at Issue**: Here, the importance of Defendant's testimony and the degree to which Defendant's credibility is central to the case both weigh in favor of admitting his prior convictions. In a case (such as this one) in which a robbery was perpetrated by masked robbers and the defense may involve an assertion that he was not involved in the offense, his credibility is central. *See United States v. Smith*, 10 F.3d 724, 727 (10th Cir. 1993) (defendant's credibility was important factor in assessing his defense). As the D.C. Circuit has noted, "it is unfair and misleading to a jury, when credibility is at issue, to refuse to admit relevant evidence that is directly probative on that issue." *Lewis*, 626 F.2d at 950. A defendant's testimony has a significant effect upon a juror's evaluation of the crime and any defenses. *See Moore*, 75 F. Supp. 3d at 455 (explaining that "what [a defendant] might say in his own defense—*e.g.*, the gun wasn't mine, the drugs were for personal use—could play a significant role in the jury's verdict. Hence, the probative value of [the defendant's] prior convictions is quite high."); *United States v. Jackson*, 627 F.3d 1198, 1209-10 (10th Cir. 2010) (explaining that "had [the defendant] chosen to take the stand his credibility would have been centrally in issue as it related to his 'flim flam' defense"). In this case, should he choose to testify, Defendant's testimony, and therefore his credibility, would likely be central to his defense.

Furthermore, in this case, Defendant is charged with violating 18 U.S.C. § 924(c). To convict Defendant, the United States must prove that he unlawfully and "knowingly" used, carried, or brandished a firearm. As such, the charge of possession requires proof of knowledge. The best

evidence of Defendant's knowledge and intent is in his own mind. Should he choose to testify, his testimony, and therefore his credibility, would be central to his defense. He may indeed offer evidence regarding his purported lack of opportunity, knowledge, and intent, which the United States would need to rebut or refute. These prior convictions would provide the jury with the necessary background and context to evaluate Defendant's credibility. Each conviction tells the jury something about his credibility as a witness or, as one Court put it, "[f]rom the jury's point of view . . . each conviction knocks a brick from [the defendant's] credibility wall." *Moore*, 75 F. Supp. 3d at 456.

Taken together, the five *Jackson* factors demonstrate the probative value of the prior convictions and outweigh any prejudicial effect. Moreover, because Defendant's knowledge is central (if he were to testify) in this case and must necessarily be rebutted or refuted by circumstantial evidence, the jury is entitled to have all of the facts relevant to weigh his credibility. Finally, any prejudice can be cured by a cautionary instruction to the jury.[4] *See Lewis*, 626 F.2d at 948. For these reasons, the Government should be allowed to use Defendant's prior convictions to impeach him if he testifies at trial pursuant to Rule 609.

---

[4] Should the Court determine that the name of the felony offense is not central to Defendant's impeachment, it may follow suit of Judge Kollar-Kotelly in another case in this District in which the United States was allowed to elicit that the defendant had been "convicted of a felony offense." *United States v. Young-Bey*, 21-cr-661, 2024 WL 249181, at *3 (D.D.C. Jan. 23, 2024).

## CONCLUSION

For the foregoing reasons, the Government asks that the Court grant the requested relief or, if

the Court reserves ruling, to consider the above arguments when the relevant issues arise during trial.

Respectfully submitted,

JEAN FERRIS PIRRO
United States Attorney


By:      /s/ *Caelainn Carney*
         CAELAINN CARNEY (NY Bar No: 5751672)
         MARK LEVY (DC Bar 241668)
         Assistant United States Attorneys
         601 D Street, N.W.
         Washington, D.C. 20530
         (202) 714-6433
         Caelainn.carney@usdoj.gov